## 58489. JAMISON et al. v. CAPITOL EXPLOSIVE, INC.

UNDERWOOD, Judge.

This is a suit on open account for explosive materials furnished by Capitol Explosive (hereafter "CE") to defendants for use in their coal mining operation. By way of defense and counterclaim defendants asserted that their agreement with CE called for the latter not only to furnish explosives, but also to perform the actual drilling and blasting operations necessary to fragment and remove the "overburden" on top of the coal so that it could be extracted. It was further alleged that CE had "failed to perform the aforesaid agreement in a workmanlike manner," and that it had supplied and used products which were "defective and proved to be useless and worthless."

At trial CE produced evidence that the account remained unpaid and that the explosives had been ordered, received, and used in defendants' enterprise. Defendants did not dispute this showing but, in support of their defense and counterclaim, tendered evidence that Bill Carpenter, who was president of CE, had represented upon forming a drilling company that production could be increased to 3,000 tons of coal per month if he took over the drilling and blasting operations. The trial court ruled out this testimony because neither Carpenter nor his drilling company were parties to the case, and his representation as to the increase in production was not relevant to the pre-existing account. When defendants stated in response to questions by the court that this representation was the basis of their defense and counterclaim, the court struck the counterclaim and directed a verdict in CE's favor on the account. Defendants appeal, and we affirm.

We find from the record that the representation

purportedly made by Carpenter did not relate to the quality of the explosives already being supplied by CE pursuant to the account but rather had reference to the use he contemplated making of them in the performance of the drilling and blasting operations which he proposed to take over. Until that time defendants, or third parties with whom they had contracted, had been performing those operations, and the explosives were being furnished by another supplier which had in its employ Glenn Rittenhauer, a knowledgeable person held in high esteem by defendants. However, Rittenhauer left that company to become vice president of CE, and defendants thereupon transferred the account there with him in order not to lose the benefit of his association. For approximately two or three months thereafter CE supplied the explosives while defendants continued to provide for their own drilling. During this period of time no complaint was made as to the quality of the explosives, and defendants did not even meet Carpenter until later when he formed the drilling company. At that point Rittenhauer introduced him to defendants, who agreed for him to take over the drilling, and at trial they were explicit and emphatic in their testimony that they had considered they were making no agreement with anyone other than Carpenter, the individual who had personally represented or "guaranteed" that production could be increased to 3,000 tons of coal per month upon his taking over the drilling.

Under these circumstances we concur with the statement of the court at trial that defendants "didn't make it out the way it was alleged." They could show no contractual relationship with CE other than the account; and except for one instance of partial failure, for which credit was given, the explosives were not shown to be defective. While defendants allude in the brief to testimony of their manager that the problems they were having in moving the overburden might have been caused by the failure of the explosives to create enough "velocity," or movement, to fragment it sufficiently, it appears from other portions of his testimony that he was not referring to defects in the explosives themselves but rather to the decisions made by Carpenter in specifying the explosives to be used. It is obvious that defendants'

dissatisfaction does not grow out of the account but rather stems from Carpenter's independent representation as to the increased production attendant upon his doing the drilling, and the fact that he may also have been an officer of CE and that CE was supplying the explosives does not taint that corporation or that account with the failure of that representation to materialize.

Since CE undertook no contractual duties to defendants other than the supplying of the explosives which were not shown to be defective, and neither Carpenter nor the drilling company are parties to this case, the court properly disallowed the testimony as to the "guarantee," and correctly struck the counterclaim, and directed the verdict for CE on the account.

*Judgment affirmed. McMurray, P. J., and Banke, J., concur.*

ARGUED SEPTEMBER 25, 1979 — DECIDED OCTOBER 11, 1979 — REHEARING DENIED OCTOBER 29, 1979 — ▊▊▊▊▊▊▊

*Michael L. Wetzel, Frank J. Klosik, Jr.,* for appellants.
*William W. Lavigno, III,* for appellee.